IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 3 1 2007

JOHN F. CORCORAN, CLERK
BY _____
DEPUTY CLERK

COMMONWEALTH GROUP-        )
WINCHESTER PARTNERS, L.P.,  )
                          )
        Plaintiff,        )        Civil Action No. 5:07CV00024
                          )
v.                        )
                          )        **MEMORANDUM OPINION**
WINCHESTER WAREHOUSING, INC.  )
                          )
and                       )        By: Hon. Glen E. Conrad
                          )        United States District Judge
SILVER LAKE, LLC,         )
                          )
        Defendants.       )

This case is before the court on the defendants' motion to dismiss the amended

complaint, the defendants' motion for sanctions under Federal Rule of Civil Procedure 11, the

defendants' motion in limine, and the defendants' motion for partial summary judgment as to the

plaintiff's claim under the theory of quantum meruit as well as the plaintiff's motion for partial

summary judgment as to its claim for breach of contract and the plaintiff's motion to amend the

scheduling order. A hearing on all of the aforementioned pending motions was held on August

17, 2007. For the reasons stated in open court as well as those set forth below, the defendants'

motion to dismiss the amended complaint will be granted in part and denied in part, the

defendants' motion for sanctions will be denied, the defendants' motions in limine and for partial

summary judgment will be denied as moot, the plaintiff's motion for partial summary judgment

will be denied and the plaintiff's motion to amend the scheduling order will be granted.

# I.     FACTUAL BACKGROUND

In 2003, Commonwealth-Winchester Partners (collectively with Commonwealth Group-Winchester Partners, L.P., "Commonwealth") and the defendants, Winchester Warehousing, Inc. and Silver Lake, LLC (collectively "WWW" or "the defendants"), began negotiating for the sale of approximately 40 acres of a 70 acre tract owned by the defendants in Winchester, Virginia, near the intersection of Virginia Route 37 and U.S. Route 50. Both parties understood that the property would be developed as a shopping center to include a Wal-Mart Supercenter. In connection with those negotiations, the defendants successfully petitioned the Frederick County Board of Supervisors to rezone the property from a Rural Area zoning district to a Highway Commercial zoning district. On June 27, 2003, James R. Wilkins, Jr. and C. Robert Solenberger, acting on behalf of WWW, entered into a Rezoning Request Proffer with the county in which they agreed to perform certain improvements in and around the property after the change in zoning.

On July 14, 2003, WWW and Commonwealth Properties Acquisition, LLC entered into a letter agreement for the "Proposed Sale and Purchase of Real Estate." In that agreement, self-described as "the preliminary agreement and understanding between WWW, LC, hereinafter referred to as 'Seller,' and Commonwealth Properties Acquisition, LLC, hereinafter referred to as 'Buyer,'" the parties agreed to the following relevant terms:

1.     The sales price of said 40 acres shall total the sum of Nine Million Two Hundred Thousand and 00/100 Dollars, ($9,200,000.00). Said sum represents the purchase price for the real estate, as well as the development costs associated with the Buyer and Seller's intended use for the Property. The payment of said sum to the Seller shall be in a manner that is acceptable to both Seller and Buyer.

2.     This agreement shall be binding on both Buyer and Seller, their heirs, successors

2

and assigns, for a period of 45 days, starting on the date this document is fully executed. It is clearly expressed and understood by all parties that the term of this letter is to be used for the preparation of the real estate purchase agreement, acceptable to both Buyer and Seller, outlining all terms and conditions of this proposed real estate purchase. **The Seller agrees not to accept any other offer for the Property during the 45 day term, or any extension thereof.**

See Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment, Exhibit 4. (Emphasis in original). The letter agreement also provided that the parties had the option to extend the term.

According to the amended complaint, agents of Commonwealth became concerned during the final negotiation process that "if the Sellers retained control of the performance of the Proffer Work, it might not be able to meet its projected timetable for the delivery of a portion of the Property to Wal-Mart. To resolve this problem, the parties agreed that the Buyer would assume responsibility for and control the performance of the Proffer Work." See Amended Complaint, ¶ 8.

After a further period of negotiation, Commonwealth-Winchester Partners, LP and the defendants signed the Real Estate Purchase Agreement (the "Agreement") on September 17, 2003. The proper interpretation of that agreement, as well as two related documents, is at the heart of this case. In relevant part, the Real Estate Purchase Agreement states as follows:

> 1.     PURCHASE AND SALE AGREEMENT: Seller hereby agrees to sell and the Buyer hereby agrees to buy, on the terms and conditions of this Agreement, the fee simple interest, including both surface rights and mineral rights, in and to that certain real property of Seller located in the County of Frederick, State of Virginia, as outlined in red on the drawing that is attached hereto as Exhibit A (the "Property"). The parties agree that the Property shall include a new internal road (the "Boundary Road") [which] shall be located to the west of the Property and shall also include all property that is required to be dedicated for right-of-way as a result of the Proffer Work, as defined below. The Boundary Road shall be located so that after deducting any property that will be in the right-of-way of the Boundary Road or that will be dedicated as right of work as a result of

3

the Proffer Work, the Property will be a minimum of forty (40) acres.

. . .

3.    PURCHASE PRICE.  The purchase price for the Property shall be the sum of Two Hundred Thousand and 00/100 Dollars ($200,000) per acre.  It is contemplated that there will be forty (40) acres; however the site plan has not been finalized, and based upon said site plan, the exact acreage in the property (to the nearest 1/1000th of an acre) determined by a survey to be performed by a surveyor or engineer licensed in the State of Virginia.  In the event the survey reveals an amount in excess of forty (40) acres is needed, then the excess amounts will be prorated at $200,000 per acre carried to the thousandth of an acre, and if less than forty (40) acres, then the purchase price will be adjusted downward accordingly.  Seller will use its best efforts to insure that the acreage equals forty (40) acres; however, the alignment with the intersection of Route 50 may cause it to exceed that amount.

4.    OFF-SITE WORK.  In addition to paying the Purchase Price, the Buyer shall perform the off-site work that is described in the summary of proffers that is attached as Exhibit B (the "Proffer Work").  In addition, to the extent that the Proffer Work cost less than $1,200,000.00, the Buyer shall spend the difference between the cost of the Proffer Work and $1,200,000.00 in constructing the Boundary Road, provided, however, in no event shall the Buyer be required to construct the Boundary Road beyond the Northwest corner of the Property.

. . .

16.    ENTIRE AGREEMENT.  This Contract and the documents referred to in this Contract constitute the entire agreement between the parties, and there are no other conditions, covenants or agreements which shall be binding between the parties.

See Amended Complaint, Exhibit 1.  The Agreement also provides that it shall be governed by and interpreted in accordance with Virginia law.  Id.

Exhibit B to the Agreement lists the Proffer Work required for the property.  The total is divided between WWW and Winchester Medical Center ("WMC"), which owned adjoining property.  The total Proffer Work was estimated in 2003 dollars at $1,619,544, with WWW responsible for $868,024, WMC responsible for $516,200, and the Virginia Department of Transportation responsible for the remainder.  The plaintiff claims in its amended complaint that,

4

during the negotiations for the sale, WWW represented that Commonwealth's share of the Proffer Work would be approximately the $868,024 listed in Exhibit B to the Agreement. However, the Agreement further provided that, if the Proffer Work cost less than $1.2 million, Commonwealth would pay the difference toward the construction of the Boundary Road.

Prior to the closing, WWW, which remained the legal owner of the property, entered into a Memorandum of Understanding with WMC with regard to a cost sharing arrangement for the cost of road improvements that comprised the Proffer Work. The Memorandum of Understanding, dated July 22, 2004, provided that "WMC shall be liable for 31.9% of the external road improvement estimated costs to include change orders and WWW shall be liable for 68.1% of the external road improvements estimated costs to include change orders." See Amended Complaint, Exhibit 4. Commonwealth and WWW closed on the sale of the property on August 26, 2004.

On August 31, 2004, WWW and Commonwealth entered into an agreement which recited that the parties had contracted for the sale of the property, that WWW and WMC had made "certain proffers . . . in connection with the Property and in connection with additional adjoining property that is owned by Winchester Warehousing - Silver Lake and by the WMC," and that WWW and WMC had entered into the Memorandum of Understanding described above. See Amended Complaint, Exhibit 3. The August 31, 2004 agreement also included the following recital that bears directly on this case:

> WHEREAS, under the terms of the [Real Estate Purchase] Agreement, Commonwealth Group has agreed to perform the work necessary to satisfy the Proffers, with the responsibility for the payment for such work being allocated to Commonwealth Group and Winchester Warehousing - Silver Lake in the Agreement; [].

5

Id. The agreement went on to state that WWW would collect the sums due under the terms of the Memorandum of Understanding from WMC and would remit those sums to Commonwealth when due. Id. at ¶ 2. Furthermore, if WMC failed to make payment as required, WWW itself would make the payments due and would then attempt to collect the relevant sums from WMC. Id.

On June 1, 2004, Commonwealth-Winchester Partners, L.P. properly assigned its interest in the Agreement and all related contracts to Commonwealth Group-Winchester Partners, L.P., the plaintiff in the instant case. See Amended Complaint, Exhibit 2. The defendants do not contest the assignment. The plaintiff claims that it has now paid for the Proffer Work in the amount of $5,960,513.58. Of that total, WMC is responsible for $1,901,403.83[1] leaving a balance of $4,059,109.75. Commonwealth states that it met with representatives of the defendants on September 27, 2005 and requested that they pay their "fair share" of the total cost of the Proffer Work which was not reimbursed by WMC. The defendants have refused to make such payments.

Commonwealth filed its complaint on March 2, 2007 asserting theories of breach of express contract and quantum meruit. On May 4, 2007, the plaintiff filed an amended complaint which added an additional cause of action for mutual mistake and reformation of the contract. In that Count, the plaintiff states that the parties intended that its share of the cost of the Proffer Work would not exceed $1.2 million and requests that, if the court finds that the terms of the agreements between the parties failed to provide for such an allocation, the court should reform the contract to include the provision on the basis of the parties' "mutual mistaken belief that the

---

[1] WMC had actually paid $1,592,664.85 of the total owed through the date the complaint was filed.

cost of the Proffer Work would not exceed $1.2 million."

The defendants have filed a motion to dismiss the amended complaint, a motion for sanctions under Rule 11, a motion in limine and a motion for partial summary judgment as to the claim under the theory of quantum meruit. The plaintiffs have filed a motion for partial summary judgment as to the claim for breach of express contract and a motion to amend the scheduling order previously entered in this case. A hearing on all of these pending motions took place on August 17, 2007.

## II.  DISCUSSION

At its heart, the proper disposition of this matter depends upon the interpretation of the language of the Real Estate Purchase Agreement in light of the Memorandum of Understanding between WWW and WMC and the subsequent August 31, 2004 agreement signed by WWW and Commonwealth.

### A.  Motion to Dismiss

1.  Standard of Review

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must determine "whether the complaint, under the facts alleged and under any facts that could be proved in support of the complaint, is legally sufficient." Eastern Shore Market, Inc. v. J.D. Assocs. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). The court must accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor of the plaintiff. The court should not dismiss a complaint for failure to state a claim, unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

7

The plaintiff in this case has attached certain documents as exhibits to its complaint, including the Real Estate Purchase Agreement, the August 31, 2004 agreement, and the Memorandum of Understanding between WWW and WMC. The court may properly consider those documents in this case without converting the motion to one for summary judgment. See American Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004 ) (holding that a court may consider certain extrinsic evidence in ruling on a 12(b)(6) motion if it was "integral to and explicitly relied on in the complaint" and the opposing party does not challenge its authenticity).

2.    Count I - Breach of Express Contract

For a plaintiff to succeed on a claim for breach of contract under Virginia law, it must show: (1) a legal obligation of a defendant to a plaintiff, (2) a violation or breach of that obligation, and (3) a consequential injury or damage to the plaintiff. Hamlet v. Hayes, 641 S.E.2d 115, 117 (2007) (citing Caudill v. Wise Rambler, 210 Va. 11, 13, 168 S.E.2d 257, 259 (1969)). The interpretation of a contract is a question of law. City of Chesapeake v. States Self-Insurers Risk Retention Group, Inc., 271 Va. 574, 578 (2006). Virginia applies the "plain meaning" rule which dictates that "[t]he contract is construed as written, without adding terms that were not included by the parties." Id. Therefore, "[t]he law will not insert by construction, for the benefit of a party, an exception or condition which the parties omitted from their contract by design or neglect." Bridgestone/Firestone, Inc. v. Prince William Square Assocs., 250 Va. 402, 407 (1995). Furthermore, "[w]hen the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning." City of Chesapeake, 271 Va. at 578. A court should also attempt to give meaning to every clause of a contract when "its parts can be

8

read together without conflict." Berry v. Klinger, 225 Va. 201, 208 (1983).

In its claim for breach of contract, Commonwealth asserts that under the terms of the Real Estate Purchase Agreement, as amended by the August 31, 2004 agreement signed by the parties, it is responsible only for "performing" the Proffer Work, with the "payment" for such work to be allocated between the parties. Because WWW has refused to reimburse Commonwealth for a proportionate share of the costs of the Proffer Work, according to the plaintiff, WWW has breached the terms of the Agreement.

Commonwealth asserts that the Agreement incorporated a purchase price of $9,200,000 and divided it into two components: $8,000,000 in cash payments directly to WWW and payment of $1,200,000 toward the cost of the Proffer Work. If the cost of the Proffer Work was less than $1,200,000, then Commonwealth agrees it would have been obligated to contribute the difference toward the construction of the Boundary Road. Commonwealth maintains that the Agreement and the August 31, 2004 agreement, which it characterizes as an amendment to the Real Estate Purchase Agreement, must be read together and that they clearly distinguish between the performance of the Proffer Work and the payment for such work as follows:

> 3. OFF-SITE WORK. In addition to **paying** the Purchase Price, the Buyer shall **perform** the off-site work that is described in the summary of proffers that is attached as Exhibit B (the "Proffer Work"). In addition, to the extent that the Proffer Work cost less than $1,200,000.00, the Buyer shall spend the difference between the cost of the Proffer Work and $1,200,000.00 in constructing the Boundary Road, provided, however, in no event shall the Buyer be required to construct the Boundary Road beyond the Northwest corner of the Property.

Real Estate Purchase Agreement ¶ 3 (emphasis added). And,

> WHEREAS, under the terms of the [Real Estate Purchase] Agreement, Commonwealth Group has agreed to **perform** the work necessary to satisfy the Proffers, with the responsibility for the **payment** for such work being **allocated to** Commonwealth Group

9

and Winchester Warehousing - Silver Lake in the Agreement; [].

Agreement dated August 31, 2004 (emphasis added). Therefore, because the contract documents clearly differentiate between the performance of and the payment for the Proffer Work, plaintiff argues, it was responsible only for making the actual arrangements required to ensure that the work was completed. According to that logic, Commonwealth did not assume the full risk that the cost of the Proffer Work would exceed the $1.2 million mentioned in the Agreement, but agreed to allocate any excess in some fashion between itself and the defendants. In the amended complaint, Commonwealth requests an unspecified "proportionate share" of the cost of the Proffer Work from the defendants.

In their motion to dismiss, the defendants argue that the Real Estate Purchase Agreement contains no language indicating an agreement to allocate the costs of the Proffer Work in excess of $1.2 million between the parties. Instead, according to the defendants, paragraph 4 of the Agreement states that the plaintiff alone accepted full responsibility for the performance of the Proffer Work, which included the payment for that work. The defendants point out that the only allocation language contained in any written agreement between the parties is included in one recital clause in the August 31, 2004 agreement, signed after the parties closed on the sale of the property. The defendants claim that this language is quoted out of context and is contradicted by the plain language of the Agreement. Indeed, according to the defendants, the fact that the plaintiff is unable to determine exactly what WWW's allocated share of costs of the Proffer Work should be illustrates "the lack of any such contractual obligation."

The defendants also assert that the Agreement does not indicate that the parties intended the purchase price of the property to be $9.2 million, even if the earlier July 2003 letter

10

agreement may make such an indication. The letter agreement was superseded by the final Real Estate Purchase Agreement which, according to WWW, is unambiguous as to payment for the property.

The defendants also assert that, during the period from August 2004 to January 2007, Commonwealth failed to send any invoices to WWW for its alleged share of the costs of the Proffer Work. During this same period of time, however, Commonwealth sent several invoices to and received payments from WMC for its share under the Memorandum of Understanding. According to WWW, this course of dealing indicates that neither Commonwealth nor WWW had the understanding that WWW was to be responsible for any share of the costs of the Proffer Work.[2] The plaintiff counters that any such course of dealing is a fact not yet in evidence and not appropriately considered in a motion to dismiss. In any case, the plaintiff did contend in its pleadings that it approached the defendant as early as 2005 in an effort to obtain reimbursement for the costs of the Proffer Work and was refused.

The court finds that, taking the agreements together, the provisions of the Real Estate Purchase Agreement regarding the responsibility for the cost of the Proffer Work are ambiguous in light of the language in the August 31, 2004 agreement. If the court were to consider only the language of the Agreement, it would find that Commonwealth was responsible for the total cost

---

[2] Section 202 of the Restatement (Second) of Contracts provides the following rules in aid of interpretation:

> (4) Where an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement. (5) Wherever reasonable, the manifestations of intention of the parties to a promise or agreement are interpreted as consistent with each other and with any relevant course of performance, course of dealing, or usage of trade.

In this case, WWW is pointing to an omission, the failure by Commonwealth to invoice WWW after the closing, rather than an active course of performance between the parties.

11

of the Proffer Work, regardless of whether it was ultimately in excess of $1.2 million. The

purchase price is plainly stated as $8,000,000 in the Agreement, not the $9,200,000 claimed by

the plaintiff. See Real Estate Purchase Agreement, ¶ 3. Furthermore, the Agreement goes on to

state that Commonwealth alone is responsible for the performance of the Proffer Work. Id. at ¶

4. No mention is made in that Agreement of any allocation of the cost of the Proffer Work

between the parties. In that context, performance does not mean simply the arrangements to

ensure that the Proffer Work was completed. Instead, it appears to encompass all of the

responsibilities associated with the Proffer Work, including payment.

In this case, however, the court cannot end its analysis with the language of the

Agreement itself. The August 31, 2004 document signed by Commonwealth and WWW refers

directly to the Agreement and states that while Commonwealth is responsible to perform the

Proffer Work, the payment for the work is to be allocated to the parties. The court is not free to

disregard this clause in its effort to interpret the language in the Agreement to which it refers.

See Berry v. Klinger, supra at 208. In light of the ambiguity raised when considering the two

agreements between the parties, the court concludes that the relevant provisions in the

Agreement may not be interpreted without considering extrinsic evidence. See Galloway Corp.

v. S.B. Ballard Const. Co., 250 Va. 493, 502 (1995) (holding that, in the case of an ambiguity, a

court may admit parol and other extrinsic evidence to ascertain the intention of the parties). It

may be that the subsequent course of dealing between the parties supports the defendants'

position that Commonwealth was fully responsible for the payment of the cost of the Proffer

Work. However, the defendants' motion to dismiss the claim for breach of contract will be

denied to permit further factual development of these issues.

12

3.      Count II - Mutual Mistake and Reformation

A court may reform or rescind a contract in equity "on the ground of mutual mistake. The mistake must be common to both parties. A unilateral mistake will not invalidate a contract." Langman v. Alumni Ass'n of Univ. of Virginia, 247 Va. 491, 503 (1994) (internal citations omitted). In this cause of action, the plaintiff claims that the parties intended to limit the total cost to Commonwealth of the Proffer Work to $1.2 million. As a result, the plaintiff contends that, if the court finds that the contract documents failed to allocate responsibility between the parties, it should also find that such failure was "the result of a mutual mistake, i.e., the parties' mutual mistaken belief that the cost to Commonwealth would not exceed $1.2 million." See Amended Complaint ¶ 28. Therefore, the plaintiff requests the court to reform the Agreement to require WWW to pay the full cost of the Proffer Work in excess of $1.2 million.

In support of their motion to dismiss Count II, the defendants contend that the doctrine of mutual mistake applies only to mistakes as to existing facts, not to predictions of future costs or events. WWW asserts that any amounts included in the Agreement to represent the cost of the Proffer Work were simply estimates based upon 2003 dollars and that the parties' understanding as to the future cost of such work was not a current fact, but a prediction as to events to occur in the future.

The Restatement of the Law, Second, Contracts, provides as follows:

§ 151. Mistake Defined

A mistake is a belief that is not in accord with the facts.

COMMENT:

a. Belief as to facts. In this Restatement the word "mistake" is used to refer to an

13

erroneous belief. A party's erroneous belief is therefore said to be a "mistake" of that party. The belief need not be an articulated one, and a party may have a belief as to a fact when he merely makes an assumption with respect to it, without being aware of alternatives. The word "mistake" is not used here, as it is sometimes used in common speech, to refer to an improvident act, including the making of a contract, that is the result of such an erroneous belief. This usage is avoided here for the sake of clarity and consistency. **Furthermore, the erroneous belief must relate to the facts as they exist at the time of the making of the contract. A party's prediction or judgment as to events to occur in the future, even if erroneous, is not a "mistake" as that word is defined here**. An erroneous belief as to the contents or effect of a writing that expresses the agreement is, however, a mistake. Mistake alone, in the sense in which the word is used here, has no legal consequences. The legal consequences of mistake in connection with the creation of contractual liability are determined by the rules stated in the rest of this Chapter.

(Emphasis added). See also, Matter of Westinghouse Elec. Corp. Uranium Contracts Litigation, 517 F. Supp. 440, 457 (E.D. Va. 1981) (holding that an erroneous prediction about the future is not a mutual mistake of fact).

In this case, the court finds that there was no mutual mistake of fact. There was an agreement between the parties regarding the sale of the property and the performance of the Proffer Work. Either the plaintiffs are correct that the parties intended to allocate the cost of the Proffer Work between themselves or the defendants are correct that the parties intended Commonwealth to bear the entire burden of the cost of the Proffer Work. Any estimates or predictions regarding the ultimate total of the cost of the Proffer Work were just that - predictions - and as such were not mutual mistakes of fact which would warrant reformation of the Agreement. Therefore, the defendants' motion to dismiss Count II of the amended complaint will be granted.

4.      Count III - Quantum Meruit

The plaintiff has alleged in the Amended Complaint that, to the extent the cost of the

Proffer Work has exceeded the $1.2 million allegedly represented by the defendants, the defendants have enjoyed a windfall because the Proffer Work has benefitted them and adjacent property owned by them. Therefore, according to the plaintiff, it is entitled to recover, in quantum meruit, for the value of the benefit thus conferred upon the defendants should the court also determine that there was no express agreement between the parties with regard to the payment of the costs of the Proffer Work in excess of $1.2 million. The defendants respond that there can be no recovery under quantum meruit because an express agreement <u>did</u> exist between the parties.

A plaintiff may recover under quantum meruit under the theories of implied-in-fact contract and quasi contract. The leading case of <u>Nossen v. Hoy</u> describes these theories as follows:

> The implied-in-fact contract is a true contract, containing all of the elements that construct an enforceable agreement. It differs from an actual contract in that the parties have not reduced it to a writing or to an oral agreement; rather, the court infers the implied-in-fact agreement from the course of conduct of the parties. In contrast, a quasi-contract is not a contract at all but rather an equitable remedy thrust upon the recipient of a benefit under conditions where that receipt amounts to unjust enrichment.

<u>Nossen v. Hoy</u>, 750 F. Supp. 740, 744 (E.D. Va. 1990). The doctrine of implied-in-fact contract does not appear to be applicable here. Instead, plaintiff appears to making its claim for quantum meruit damages under the theory of quasi contract. According to Virginia law, to recover under a theory of quasi contract, a plaintiff must prove the following elements: (1) A benefit conferred on the defendant by the plaintiff; (2) Knowledge on the part of the defendant of the conferring of the benefit; and (3) Acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value. <u>Id.</u> at

15

744-45.

The court in <u>Nossen</u> also stated, however, that "[t]he quasi-contract is a plaintiff's remedy at law when the facts establish that a defendant has been unjustly enriched at the expense of the plaintiff, *but where the facts fail to establish that the parties established any form of agreement*." <u>Id.</u> at 744 (emphasis added). <u>See also</u>, <u>Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp.</u>, 961 F.2d 489, 491 (4th Cir. 1992) (noting the "well settled" rule that a party may not recover in quantum meruit against another party with whom the claimant has an express contract on the same matter or subject in question); <u>Vollmar v. CSX Transportation, Inc.</u>, 705 F. Supp. 1154, 1176 (E.D. Va. 1989) ("Unjust enrichment claims can arise only where, unlike here, there is no express contract, whether written, oral or both. . . . '[T]here can be no recovery in quantum meruit where a valid express contract between the parties exists. Parties to an express contract are entitled to have their rights and duties adjudicated exclusively by its terms.'") (quoting <u>In re Stevenson Assoc.</u>, 777 F.2d 415, 421-22 (8th Cir. 1985)).

In this case, there was an express, written agreement between the parties with regard to the subject matter in question, *i.e.* the sale of the property and the responsibility for the Proffer Work. The parties may disagree with regard to the proper interpretation of that agreement, nevertheless the court finds that their respective obligations shall be governed by the Agreement and related contracts. As a result, the plaintiff may not pursue a claim under a theory of quantum meruit, or unjust enrichment, and the court will grant the defendants' motion to dismiss Count III of the amended complaint.

**B.     Defendants' Motion for Rule 11 Sanctions**

The defendants seek Rule 11 sanctions against both the plaintiff and its attorneys,

although they fail to point to the specific sections of the Rule that would justify such sanctions.

Given their assertions, however, it appears that they are claiming the right to sanctions based on

alleged violations of the following:

> (b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, --

>> . . .
>> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension of, modification, or reversal of existing law or the establishment of new law;

>> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;

>> . . .

Federal Rule of Civil Procedure 11. As the plaintiff points out, however, a party may not make a

claim for monetary sanctions under Rule 11 against a represented party under Rule 11(b)(2).

Fed. R. Civ. P. 11(c)(2)(A). Therefore, any such claim against the plaintiff itself could proceed

only under Rule 11(b)(3).

In any case, a court may take the extraordinary step of awarding sanctions under Rule

11(b)(2) if the attorney for a party, when compared to a reasonable attorney in like circumstances,

"could not have believed his actions to be legally justified." Morris v. Wachovia Securities, Inc.,

448 F.3d 268, 277 (4th Cir. 2006) (quoting Hunter v. Earthgrains Co. Bakery, 281 F.3d 144, 153

(4th Cir. 2002)). Under Rule 11(b)(3), a court may impose sanctions against a party and its

attorney whose factual allegations are "unsupported by *any* information obtained prior to filing."

Id. (internal citations omitted).

17

The defendants assert that none of the plaintiff's claims are warranted under existing law, as more fully described above in the discussion of the defendants' motion to dismiss. The defendants also contend that the plaintiff's claim that it believed or understood it had a contractual claim to reimbursement by the defendants is factually false for the following reasons: (1) it has sent 13 invoices to WMC for its share of the cost of the Proffer Work from November 2005 to January 2007 and has never sent WWW any invoice for its allegedly "allocated" share of these costs; and (2) plaintiff's internally prepared pro-formas, several of which were sent to its lender, indicated offsets to the cost of the Proffer Work from WMC as well as Wal-Mart, with whom Commonwealth allegedly had a development agreement, but none from WWW.

With regard to Counts II and III of the amended complaint, which are based in part upon plaintiff's contention that WWW represented to it that the total cost of the Proffer Work would not exceed $1.2 million, the defendants argue that the plaintiff's assertion is again false. The defendants contend that plaintiff was aware that any estimated figures in the exhibit to the Agreement came only from engineer Charles Maddox, who was working on the project for WWW, WMC and Commonwealth. Furthermore, according to the defendants, those costs were understood to be estimates made in 2003 dollars before the exact scope of the work was known and before any actual construction plans had been drawn up. The defendants allege that any cost overruns were due to increased costs and more rigorous requirements at the time plaintiff finally arranged for the Proffer Work in 2005 and 2006, not to any factors within the control of the defendants. The defendants also assert that the plaintiff should be barred from seeking equitable relief in this case from its own intentional conduct.

The plaintiff counters the defendants' assertion that its claims are not warranted by

18

existing law by essentially restating its counter-arguments to defendants' motion to dismiss as noted above. With regard to the falsity of its factual allegations, the plaintiff first notes that its claim for breach of contract is grounded in the language of the contracts and that the contracts themselves can not be deemed false statements. The plaintiff also notes that the defendants' assertions with regard to post-contract behavior are attempts to improperly bring in evidence outside the parties' written agreements and furthermore do not represent false facts upon which the plaintiff based its Amended Complaint. The plaintiff also contends that the defendants have misrepresented to the court that the agreements explicitly require the plaintiff to pay for the full cost of the Proffer Work. In fact, the plaintiff points to certain deposition testimony by one of the defendants' attorneys in which he made the distinction between WWW's obligation to perform the Proffer Work and its obligation to pay for that work in the context of its agreement with the Frederick County Board of Supervisors - the very argument that the plaintiff has advanced in this litigation. Finally, the plaintiff claims that the frivolous nature of the motion for sanctions warrants an award to Commonwealth of its attorney's fees and costs related to the defense of the motion pursuant to Federal Rule of Civil Procedure 11(c)(1)(A). See Baker v. Urban Outfitters, Inc., 254 F. Supp. 2d 346, 361 (S.D.N.Y. 2003) (holding that, where a Rule 11 motion is completely without merit, the prevailing party on the motion may be compensated for "reasonable expenses and attorney's fees incurred in opposing the motion").

With regard to the defendants' contentions of falsity in Counts Two and Three of the Amended Complaint, Commonwealth responds that the engineer who provided the original 2003 estimates of the cost of the Proffer Work has testified in his deposition that he was working only for Winchester Warehousing, not for the plaintiff as well as the defendants, and that those

19

estimates were based upon his detailed calculations at the time. In addition, the plaintiff contends that representatives of WWW have testified in their depositions that they were aware that the engineer was working for them alone and that they had ensured the estimates were passed along to Commonwealth. As a result, the plaintiffs argue, the defendant's contention that its claims were based upon false facts is simply untrue.

The court finds that the plaintiff's allegations are not inconsistent with a reasonable interpretation of the documents at issue in this case. Furthermore, although the court will grant defendants' motion to dismiss Counts II and III of the amended complaint as stated above, the court notes that these alternative counts do not contain frivolous legal arguments in the context of the case. Although the defendants have attempted to point to particular facts which they believe are untrue, the court finds that none of the evidence presented is sufficient to show that the plaintiff has made its factual assertions in anything other than good faith. The motion for Rule 11 sanctions is meritless based upon the present state of the record and will be denied. If the defendants believe they can demonstrate at some later point in the case that the plaintiff or its counsel failed to advance their case or arguments in good faith, they may file another such motion at that time. The plaintiff is free to make a request for the costs and fees incurred in defending this motion in a separate motion to this court.

## C.      **Plaintiff's Motion for Partial Summary Judgment as to Count One**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is properly granted if "there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could

Case 5:07-cv-00024-GEC-BWC    Document 64    Filed 08/31/07    Page 20 of 24    Pageid#: 832

return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Industries, Inc., 763 F.2d 604, 610 (4th Cir. 1985). When a motion for summary judgment is supported by affidavits or other evidence as provided for in Rule 56, the opposing party may not rest upon the allegations in the pleadings and must, instead, present evidence showing that there is a genuine issue for trial. If the adverse party fails to present such evidence, summary judgment, if appropriate, should be entered. Fed. R. Civ. P. 56(e); Atkinson v. Bass, 579 F.2d 865, 866 (4th Cir.), cert. denied, 439 U.S. 1003 (1978).

The plaintiff has moved for partial summary judgment as to its breach of contract claim only with regard to the defendants' liability for some portion of the costs of the Proffer Work in excess of $1.2 million. The plaintiff concedes that the contract documents at issue in this case do not specify the exact amount or proportion of the allocation, but asserts that those documents do nevertheless reflect the parties' intention to share the costs. As noted previously, the plaintiff's argument is essentially that the contract documents, when read together, clearly state that: (1) Commonwealth bore the responsibility to perform the Proffer Work; (2) it was bound to pay up to $1.2 million to defray the cost of the Proffer Work; (3) if the Proffer Work cost less than $1.2 million, Commonwealth would pay the difference toward the construction of a boundary road; and (4) if the total cost of the Proffer Work exceeded $1.2 million, that excess would be allocated, in some fashion, to both Commonwealth and WWW. In addition to restating its arguments in opposition to the defendants' motion to dismiss, the plaintiff relies upon the deposition testimony of C. Robert Solenberger, the Treasurer for Winchester Warehousing, in

21

which Solenberger stated that he would have to go outside the four corners of the Agreement to support his contention that the plaintiff was responsible for all of the costs of the Proffer Work, including any in excess of $1.2 million.

The defendants respond that it would be premature to reach a decision on the plaintiff's motion for partial summary judgment because discovery as to certain critical issues is ongoing in this case. More particularly, the defendants claim that they await documents from the engineer on the project and documents connected with the plaintiff's relationship with Wal-Mart and the property.[3] Furthermore, the depositions of the plaintiff's corporate designees are scheduled to take place at the end of August. The defendants also note that the quotes taken from deposition testimony are out of context, and in the case of Mr. Solenberger, were of an elderly gentleman who had little memory of the transaction at issue in this case. The defendants also incorporate their arguments in favor of their motion to dismiss Count I of the Amended Complaint as described above. With regard to discovery pending from Wal-Mart, the plaintiff responds that it would have no bearing on liability under the terms of the contracts and that, in any case, the defendants have always been aware that this was a Wal-Mart development.

As the court stated previously, the Real Estate Purchase Agreement, when considered along with the Memorandum of Understanding and the August 31, 2004 agreement between the parties, is ambiguous with regard to the ultimate responsibility of the cost of the Proffer Work. The court is compelled to consider extrinsic evidence in order to resolve the factual disputes in

_____

[3] The Development Agreement signed by Commonwealth and Wal-Mart appears to indicate that Wal-Mart may be responsible for 53.86% of the Proffer Work up to a maximum of $4,952,200. See Exhibit 1 to Defendants' Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment. Defendants claim that the plaintiff has refused to provide additional documents pertaining to the obligations of Wal-Mart with regard to the property.

22

this case regarding the intention of the parties on this matter. The evidence presented to date is not sufficient for this purpose, and discovery is ongoing. Therefore, because there remain genuine disputes as to material facts in this case, the plaintiff's motion for partial summary judgment on its breach of contract claim is premature and will be denied.

**D.      Plaintiff's Motion to Amend Scheduling Order**

The plaintiff requests the court to move the disclosure date for affirmative experts and reports from July 15, 2007 to August 24, 2007 and the disclosure date for rebuttal experts and reports from August 15, 2007 to September 14, 2007. The plaintiff asserts that these dates will provide time for the court to rule on the dispositive motions currently pending and allow the parties time to obtain certain materials requested during discovery and not yet received. The defendants object to the plaintiff's motion but indicated in their brief and at the hearing that they would not object to the court vacating the scheduling order and setting a new trial date and discovery deadlines after ruling on the motion to dismiss. The plaintiff has indicated that it would be in agreement with this alternative.

The court agrees that it would be advisable to extend the dates set forth in the current scheduling order to permit the parties to complete discovery and to designate experts. Therefore, the plaintiff's motion will be granted. The parties are directed to choose a new trial date in conjunction with the court's scheduling clerk. Discovery deadlines will be rescheduled based on the new trial date.

**E.      Defendants' Motion in Limine with Respect to Plaintiff's Expert Witness Testimony and Motion for Partial Summary Judgment as to Count Three**

The defendants have requested the court to prohibit the plaintiff from introducing any

Case 5:07-cv-00024-GEC-BWC   Document 64   Filed 08/31/07   Page 23 of 24   Pageid#: 835

expert testimony at trial as to any aspect of the case, from introducing any testimony as to Count III (Quantum Meruit), and for summary judgment as to Count III. The defendants note that the Amended Scheduling Order provided that plaintiff's expert reports were to be disclosed on July 15, 2007, but that as of July 23, 2007, the plaintiff has failed to file such reports or identify any expert witnesses. Because the court will grant the plaintiff's motion to amend the scheduling order, which will extend the deadlines for the disclosure of experts' reports, as well as defendants' motion to dismiss Count III of the amended complaint, these arguments are now moot, and the motions will be denied.

## III.   **CONCLUSION**

For the reasons set forth above, the court will grant in part and deny in part the defendants' motion to dismiss the amended complaint, deny defendants' motion for Rule 11 sanctions, deny as moot defendants' motions in limine and for partial summary judgment, deny plaintiff's motion for partial summary judgment, and grant plaintiff's motion to amend the scheduling order.

The Clerk of Court is hereby directed to send certified copies of this Memorandum Opinion and the accompanying Order to all counsel of record.

ENTER:        This 31st day of August, 2007.

_____
United States District Judge