```
CLERK'S OFFICE U.S. DIST. COURT
       AT ROANOKE, VA
            FILED
        NOV 2 7 2007
   JOHN F. CORCORAN, CLERK
   BY: /s/ Deputy Clerk
```

| | |
|---|---|
| COMMONWEALTH GROUP-<br>WINCHESTER PARTNERS, L.P., | )<br>)<br>) |
| Plaintiff, | ) Civil Action No. 5:07CV00024 |
| v. | )<br>) **MEMORANDUM OPINION** |
| WINCHESTER WAREHOUSING, INC. | ) |
| and | ) By: Hon. Glen E. Conrad<br>) United States District Judge |
| SILVER LAKE, LLC, | ) |
| Defendants. | ) |

This case is before the court on the plaintiff's motion for reasonable expenses and attorneys' fees and for sanctions under 28 U.S.C. § 1927. A hearing on these motions was held on November 20, 2007. For the reasons stated in open court as well as those set forth below, the motion for reasonable expenses and attorneys' fees will be granted in part and taken under advisement in part, and the plaintiff's motion for sanctions under 28 U.S.C. § 1927 will be denied.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

This case is a breach of contract action between Commonwealth Group-Winchester Partners, L.P. ("Commonwealth") and the defendants, Winchester Warehousing, Inc. and Silver Lake, LLC (collectively "WWW" or "the defendants"). In 2003, Commonwealth and WWW began negotiating for the sale of approximately 40 acres of a 70 acre tract owned by the defendants in Winchester, Virginia, near the intersection of Interstate 37 and U.S. Route 50.

Both parties understood that the property would be developed as a shopping center to include a Wal-Mart Supercenter. The parties entered into a letter agreement for the "Proposed Sale and Purchase of Real Estate" on July 14, 2003. The parties later signed a Real Estate Purchase Agreement on September 17, 2003. In relevant part, the Real Estate Purchase Agreement states as follows:

> 4. OFF-SITE WORK. In addition to paying the Purchase Price, the Buyer shall perform the off-site work that is described in the summary of proffers that is attached as Exhibit B (the "Proffer Work"). In addition, to the extent that the Proffer Work cost less than $1,200,000.00, the Buyer shall spend the difference between the cost of the Proffer Work and $1,200,000.00 in constructing the Boundary Road, provided, however, in no event shall the Buyer be required to construct the Boundary Road beyond the Northwest corner of the Property.

Exhibit B to this Agreement lists the specific Proffer Work required for the property with an estimated cost in 2003 dollars of $1,619,544. WWW also entered into a Memorandum of Understanding with Winchester Medical Center, the owner of an adjacent parcel, which provided that the Medical Center would be responsible for 31.9% of the Proffer Work and that WWW would be responsible for 68.1% of those costs. Commonwealth and WWW closed on the sale of the property on August 26, 2004.

On August 31, 2004, WWW and Commonwealth entered into another Agreement which stated that WWW would collect the sums due under the terms of the Memorandum of Understanding from Winchester Medical Center and would remit those sums to Commonwealth when due. Furthermore, if the Medical Center failed to make payment as required, WWW agreed to make the payments due and would then attempt to collect the relevant sums from the Medical Center. This Agreement also included the following recital:

2

> WHEREAS, under the terms of the [Real Estate Purchase] Agreement, Commonwealth Group has agreed to perform the work necessary to satisfy the Proffers, with the responsibility for the payment for such work being allocated to Commonwealth Group and Winchester Warehousing - Silver Lake in the Agreement; [].

In filing this case, Commonwealth relied upon this language, in combination with the Real Estate Purchase Agreement, to support its claim that WWW is responsible for at least some portion of the cost of the proffer work in excess of the amount for which Winchester Medical Group was responsible. WWW, on the other hand, argued that the language in the August 31, 2004 Agreement is mere surplusage and that the Real Estate Purchase Agreement between the parties expressly provides that Commonwealth alone is responsible for both the performance and the payment of the total cost of the proffer work.

Commonwealth's amended complaint included the following causes of action: (1) breach of express contract; (2) mutual mistake of fact; and (3) quantum meruit. The defendants filed a motion to dismiss the amended complaint, a motion for sanctions under Rule 11, a motion in limine and a motion for partial summary judgment as to the claim under the theory of quantum meruit. The plaintiffs filed a motion for partial summary judgment as to the claim for breach of express contract and a motion to amend the scheduling order previously entered in this case. The court held a hearing on those motions on August 17, 2007.

Following that hearing, the court granted WWW's motion to dismiss with regard to the plaintiff's claims for mutual mistake of fact and quantum meruit, but allowed the breach of express contract claim to proceed. The court also granted the motion to amend the scheduling order, but denied all the other pending motions in the case including the defendants' motion for sanctions under Rule 11, which it held to be without merit based on the information before the

court as of the day of the hearing. The court also stated that Commonwealth was free to make a request for its costs and fees incurred in defending against the motion for sanctions. Commonwealth has now made such a motion and has also moved for sanctions under 28 U.S.C. § 1927.

II. **DISCUSSION**

Federal Rule of Civil Procedure 11 provides as follows:

> A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. *If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion.*

Fed. R. Civ. P. 11(c)(1)(A) (emphasis added). Commonwealth asserts that it is entitled to its reasonable costs and attorneys' fees incurred in defending against the defendants' Rule 11 motion for sanctions because it was the prevailing party with regard to that motion.

In support of its request for reasonable attorneys' fees and costs, Commonwealth claims that not only did this court find the defendants' Rule 11 motion for sanctions to be without merit, but the motion itself was based upon misrepresentations and improper characterizations of the documents and facts at issue in the case. For example, Commonwealth states that the defendants falsely argued that the costs of the proffer work were informally estimated by Charles Maddox while he was working as an engineer for all of the parties, although Maddox himself testified in his deposition that he was working only for the defendants when he arrived upon his estimates and that those estimates were based upon detailed calculations. Commonwealth also contends

4

that the defendants improperly characterized the purchase agreement between the parties as explicitly stating that Commonwealth would be solely responsible for both the performance and the payment of the proffer work when the agreement does not contain such an express statement.

Commonwealth also asserts that WWW failed to provide it with a copy of the motion for sanctions prior to filing the motion with the court, in violation of the safe harbor provision of Federal Rule of Civil Procedure 11(c)(1)(A). Although the defendants did provide a copy of a motion for sanctions to the plaintiff shortly after Commonwealth filed its initial complaint, that copy appears to be different from the one actually filed with the court following Commonwealth's filing of its amended complaint. At the hearing on this matter, however, counsel for the plaintiff admitted that Commonwealth could have asked the court to dismiss the defendants' Rule 11 motion due to the failure to comply with Federal Rule of Civil Procedure 11(c)(1)(A). Nevertheless, the plaintiff chose to proceed to defend the motion in an attempt to succeed on the merits. As a result, the award of attorneys' fees and costs would not be appropriate solely on the grounds that the defendants may have failed to comply with the safe harbor provision set forth in Rule 11(c)(1)(A).

Commonwealth next contends that WWW improperly attempted to obtain an award of sanctions against counsel for Commonwealth who had not signed the pleadings at issue, specifically Tim Cupp and Christopher Ashby. Those attorneys were required to be present in court for the hearing on the motion for sanctions under Rule 11 at additional cost to the plaintiff, although the plaintiff had noted in its response that those attorneys were improperly included in the defendants' Rule 11 motion. See Plaintiff's Brief in Response to Defendants' Rule 11 Motion, at 17-18. Finally, the plaintiff asserts that the defendants' attempt to obtain sanctions

5

against Commonwealth itself was improper because Federal Rule of Civil Procedure 11(c)(2)(A) prohibits the award of monetary sanctions against a represented party when the request is based upon an allegedly legally deficient claim. A representative of Commonwealth traveled to attend the hearing on the Rule 11 motion and incurred expenses connected with his attendance.

With regard to the plaintiff's motion for reasonable attorneys' fees and costs, the defendants have responded that it would be premature for the court to make any determination of the proper amount of attorneys' fees and costs incurred by the plaintiff as a prevailing party on WWW's Rule 11 motion for sanctions given the fact that discovery in this case is ongoing. The defendants also restated their assertion that the plaintiff has brought its claims for breach of express contract in bad faith.

The court agrees that it is premature to make a general award of sanctions or reasonable attorneys' fees and costs incurred in defending against the defendants' Rule 11 motion. At this point in the case, the court is unable to make a final determination with regard to Commonwealth's good faith in bringing this action. Although the court previously found that the defendants' motion for sanctions under Rule 11 was without merit given the state of the record at that time, that holding alone does not entitle the plaintiff to its attorneys' fees and costs as a matter of course. Furthermore, the court does not find that any of the alleged factual misstatements by the defendants in their Rule 11 motion were so overtly false as to justify the award of sanctions. The court does find some merit to the plaintiff's assertion that the defendants' claim of frivolousness based upon its characterization of the language of the Real Estate Purchase Agreement as explicit was improper; however, the other misstatements alleged by the plaintiff, including its allegations regarding the characterization of the estimates provided

6

by Charles Maddox, are essentially technicalities in this context.

In any case, the court finds that it is necessary to fully understand all of the facts and circumstances surrounding the plaintiff's claims prior to ruling on the motion for sanctions or assessing costs under Rule 11. If the court later finds that the plaintiff's claims are frivolous, the plaintiff may be foreclosed from receiving an award of any costs or attorneys' fees associated with the defendants' motion for sanctions. Therefore, the court will take the motion under advisement at this time.

The court does find, however, that there was no basis for the defendants' motion for sanctions under Rule 11 against any attorney representing the plaintiff other than the attorney who signed the pleadings at issue. Furthermore, the defendants failed to clarify their motion after the plaintiff pointed out this deficiency in its brief in response to the defendants' Rule 11 motion. Therefore, the defendants will be assessed for the costs of attendance at the hearing of attorneys Tim Cupp and Christopher Ashby at the conclusion of the proceedings in this case.[1]

Commonwealth also contends that it is entitled to an award of sanctions under 28 U.S.C. § 1927 which provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

The Fourth Circuit has held that a court may award such costs and fees to a party under 28 U.S.C. § 1927 only upon a finding of bad faith on the part of counsel for the opposing party. <u>Chaudhry</u>

---

[1] The plaintiff may submit to the court an itemization of the reasonable fees and costs incurred by Tim Cupp and Christopher Ashby as a result of their attendance at the hearing. Following this submission, the defendant will have ten (10) days in which to file any objections to the reasonableness of those fees and costs.

7

Case 5:07-cv-00024-GEC-BWC   Document 89   Filed 11/27/07   Page 7 of 9   Pageid#: 1117

v. Gallerizzo, 174 F.3d 394, 411 n.14 (4th Cir. 1999) (quoting Brubaker v. City of Richmond, 943 F.2d 1363, 1382 n. 25 (4th Cir. 1991)). See also, Hunt v. Lee, 166 Fed. Appx. 669, 672 (4th Cir. 2006) ("[A] finding of bad faith is a necessary precondition to imposition of fees on an attorney under 28 U.S.C. § 1927."); Thomas v. Ford Motor Co., 2007 WL 2253545 *3 (4th Cir. 2007) (finding that § 1927 is "triggered by subjective bad faith"). The sanctions Commonwealth requests pursuant to this section are the same attorneys' fees and costs incurred in relation to its defense of WWW's motion for sanctions under Rule 11 which the plaintiff claims has unnecessarily multiplied the proceedings in this case in that it was improper and unnecessary, based upon misstatements and deficiencies in legal analysis, and directed toward improper parties.

The court finds that the plaintiff has failed to make any allegation of bad faith on the part of the defendants in bringing their original motion for sanctions under Rule 11 which would justify the consideration of an award of sanctions under 28 U.S.C. § 1927. Furthermore, the court concludes that the evidence adduced at the hearing does not support a finding of bad faith. Therefore, the plaintiff's motion for sanctions will be denied at this time, however the plaintiff may renew the motion if it is able to demonstrate bad faith on the part of the defendants at some point in the future.

### III. CONCLUSION

The court will grant the motion for attorneys' fees and costs with regard to the reasonable fees and costs incurred by Tim Cupp and Christopher Ashby, attorneys for the plaintiff, associated with their attendance at the hearing with regard to the defendants' motion for sanctions under Rule 11. As to any other fees and costs associated with defending against the

8

Case 5:07-cv-00024-GEC-BWC   Document 89   Filed 11/27/07   Page 8 of 9   Pageid#: 1118

motion, the court will take plaintiff's request under advisement pending the conclusion of this matter. The plaintiff's motion for sanctions under 28 U.S.C. § 1927 will be denied, however, because the plaintiff has made no showing of bad faith on the part of the defendants.

The Clerk of Court is directed to send certified copies of this Opinion and the accompanying Order to all counsel of record.

ENTER: This 27th day of November, 2007.

/s/ Jack Conrad
United States District Judge